**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| QUANERGY SYSTEMS, INC.,[1] | Case No. 22-11305 (CTG) |
| Debtor. | **Re: D.I. 12 & 59** |

**DECLARATION OF LAWRENCE PERKINS IN SUPPORT OF THE**
**SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

I, Lawrence Perkins, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer ("CRO") and President of the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"). I am also the founder and Chief Executive Officer of SierraConstellation Partners LLC ("SCP"). SCP has been retained to provide a chief restructuring officer pursuant to the *Order (I) Authorizing Debtor to Retain SierraConstellation Partners, LLC to Provide a Chief Restructuring Officer, (II) Designating Lawrence Perkins as Chief Restructuring Officer for the Debtor, Effective as of the Petition Date; and (III) Granting Related Relief* [Docket No. 156].

2. I submit this declaration (this "Declaration") in support of the proposed sale of substantially all of the Debtor's assets (the "Assets") to ROLISI, LLC, or its designee ("ROLISI") pursuant to the *Asset Purchase Agreement* between the Debtor and ROLISI (as may be amended, the "Purchase Agreement") and the Bidding Procedures Motion.[2] On December 21, 2022, the

---

[1] The Debtor and the last four digits of its taxpayer identification number are: Quanergy Systems, Inc. (5845). The Debtor's mailing address for purposes of the Chapter 11 Case is 433 Lakeside Drive, Sunnyvale, CA 94085.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

30087705.1

Court entered an order granting the relief requested in the Bidding Procedures Motion, including approving the Bidding Procedures and authorizing the Debtor's entry into a Purchase Agreement with the Successful Bidder, subject to a further hearing and entry of the Sale Order [Docket No. 59] (the "Bidding Procedures Order").

3. In my capacity as CRO of the Debtor, and because of my discussions with the Debtor's employees, advisors, professionals, Board of Directors (the "Board"), and the Executive & Transactions Committee of the Board ("E&T Committee"), I have become generally familiar with the Debtor's day-to-day operations, business and financial affairs, and books and records. My background and qualifications as well as the qualifications of SCP are set forth in the *Declaration of Lawrence Perkins in Support of the Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Employ and Retain SierraConstellation Partners, LLC to Provide a Chief Restructuring Officer; (II) Designating Lawrence Perkins as Chief Restructuring Officer for the Debtor, Effective as of the Petition Date and (III) Granting Related Relief* [Docket No. 63, Ex. B] and the First Day Declaration.

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information learned from my review of relevant documents, and information I have received from members of the Debtor's management team and the Debtor's advisors, including my team at SCP. If I were called to testify, I could and would testify competently to the facts set forth herein.

**Prepetition Marketing Process and the Chapter 11 Case**

5. As more fully set forth in the First Day Declaration, in the period leading up to the Petition Date, the Debtor experienced operational, financial, and macroeconomic challenges that have, over time, tightened the Debtor's liquidity, complicated the Debtor's operations, and limited

the Debtor's access to capital. Faced with these challenges, the Debtor determined that it was necessary to explore strategic alternatives to preserve its liquidity, maintain its operations, and maximize value for its stakeholders. On June 29, 2022, the Debtor retained Raymond James & Associates, Inc. ("Raymond James") to explore and evaluate strategic alternatives, including a going-concern sale of the Debtor's business and various financing options. Raymond James' outreach focused on parties that would be a strategic fit for the Debtor, including other LiDAR providers and other prospects that could potentially leverage the Debtor's sensors and software in other markets. The Debtor, with the assistance of Raymond James, contacted 36 potential buyers as part of this prepetition process.

6. The Debtor's prepetition marketing process, however, did not result in a successful sale to a strategic partner or a comprehensive financing transaction. As a result, the Debtor determined, in consultation with its advisors, that a timely marketing and sale process in chapter 11 that includes a broader outreach to potential purchases, including those interested in purchasing individual assets in addition to a going concern sale, would maximize value for the Debtor's estate and all its stakeholders. Accordingly, the Debtor filed the Chapter 11 Case with the goal of consummating a value-maximizing sale transaction for the benefit of all stakeholders and an orderly wind down of its businesses.

### Postpetition Marketing and Sale Process

7. Following the Petition Date, the Debtor's investment banker, Raymond James, continued to market the Debtor's assets and engage with third parties to discuss their interest in a potential sale. Unlike the prepetition marketing process, postpetition the Assets were marketed more broadly, including by contacting potential purchasers that may be interested in only certain business segments or assets. Throughout the sale process, Raymond James provided regular

updates to me, the E&T Committee, and the Debtor's management team, including various presentations, conference calls, email correspondence, and other communications. In addition, I provided guidance and direction to the Debtor's advisors when needed and appropriate.

8.  Based on these updates, it is my understanding that Raymond James facilitated an extensive and comprehensive postpetition marketing and sale process, including contacting new potential purchasers as well as reengaging parties who had participated in the Debtor's prepetition marketing process. Postpetition, Raymond James engaged a total of 141 potential buyers to obtain competing bids. Specifically, Raymond James contacted 40 potential purchasers that it reached out to as part of the prepetition sale process and 84 new parties as part of its postpetition outreach, including one party that the Committee introduced to the Debtor, and received 17 inbound inquiries prompted by parties in interest.

## Purchase Agreement and Highest and Best Offer for the Assets

9.  Prior to the commencement of the Auction, the Debtor received five (5) Bids, and determined, in consultation with the Consultation Parties, that four (4) Bids met the criteria to be "Qualified Bids" pursuant to the Bidding Procedures. Two of the Qualified Bids were for only certain assets of the Debtor, and the other two Qualified Bids were for substantially all of the Debtor's assets.

10. On January 24, 2023, in accordance with the Bidding Procedures Order, the Debtor adjourned the Auction to January 26, 2023 at 12:00 p.m. (prevailing Eastern Time). The Auction took place at the offices of Raymond James located at 320 Park Ave., Floor 12, New York, NY 10022. The Debtor did not close the Auction on January 26, 2023, and instead, pursuant to the Bidding Procedures and in consultation with the Consultation Parties, determined that it would be in the best interests of the Debtor's estate if the Auction were adjourned to a later date and time.

The adjournment provided the Debtor and its advisors time to review and consider the then highest bid, and discuss the same with the Consultation Parties. The Debtor, in consultation with the Consultation Parties, resumed the Auction on January 30, 2023. Prior to resuming the Auction on January 30, 2023, the Debtor received another Bid from a prospective Bidder, which bid was for substantially all of the Debtor's assets. The Debtor determined, in consultation with the Consultation Parties, to qualify this bid. Therefore, upon resuming the Auction on January 30, 2023, there were five (5) Qualified Bids.

11. Upon the conclusion of the Auction on that same date, the Debtor, in consultation with the Consultation Parties, determined that the Qualified Bid submitted by ROLISI was the highest or otherwise best offer for the Debtor's Assets, and named ROLISI the Successful Bidder of the Assets, and named Quanergy 3D, LLC as the Next-Highest Bidder. The Successful Bidder and the Debtor finalized the agreed sale terms in the Purchase Agreement in the days following the Auction. The Debtor filed a substantially final form of the Purchase Agreement on January 30, 2023 [Docket No. 180].

**<u>Good Faith</u>**

12. The Successful Bidder is a Florida limited liability company. It is my understanding that ROLISI currently has one owner, but that a member of the Debtor's Board, Tamer Hassanein, may become a member of ROLISI prior to or following the Closing Date, and that therefore, a future member of the Successful Bidder is as an "insider" of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Court.

13. The Debtor has taken a number of steps to ensure that its marketing process has been conducted in a manner that ensures fairness to all potential bidders. First, as stated above, immediately upon learning of expressions of interest by certain members of the Debtor's Board

during the prepetition period, the Debtor appointed the E&T Committee, which excluded any Board member that expressed interest in participating in the Debtor's sale process. The Board of Directors vested the E&T Committee with the full power of the Board, including all decision-making related to the Debtor's pursuit of strategic alternatives, including with respect to its prepetition sale process, potential chapter 11 filing, and following the Petition Date, with all authority related to this Chapter 11 Case and the Debtor's postpetition sale process.

14. In addition, the Debtor undertook certain steps to ensure proper corporate governance throughout the process, including, without limitation, prior to commencing this Chapter 11 Case, by resolution of the Board of Directors of Quanergy Systems, Inc., I was appointed CRO and President of the Debtor to oversee the sale process. As CRO, the Debtor fully empowered me to (i) review, evaluate, and negotiate any potential sale transaction, and assist management of the Debtor in their review, evaluation, and negotiation of any potential sale transaction and (ii) determine whether any proposed transaction is in the best interest of the Debtor and make recommendations to the E&T Committee with respect to any proposed transaction, the Debtor's sale process, and entry into any definitive agreements. Moreover, as previously discussed, following the Petition Date, Raymond James engaged 141 potential bidders, and afforded each potential bidder a full and fair opportunity to access the Assets, review the materials uploaded to the data room, meet with the Debtor's management, and otherwise conduct diligence on the Debtor's business and Assets, and the Debtor conducted the postpetition sale process in accordance with the Bidding Procedures Order as entered by the Court.

15. I believe that the Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Successful Bidder in good faith, from arm's-length bargaining positions, and that the purchase price was not controlled by any agreement among the bidders. Moreover, I

am not aware of any evidence of collusion in the sale process or any evidence indicating that the Debtor and the Successful Bidder are fraudulently entering into the transaction contemplated by the Purchase Agreement. I believe the Successful Bidder acted in compliance with the Bidding Procedures Order and conducted itself in good faith and in a non-collusive manner. Accordingly, I believe that the Successful Bidder is purchasing the Assets in good faith and fair value, and is a good faith purchaser.

16. I also believe the Successful Bid and the Purchase Agreement constitute the highest or otherwise best offer for the Assets, based on the cash consideration provided to the Debtor's estate and the liabilities to be assumed by the Successful Bidder, and includes fair and reasonable terms that maximize the value of the Debtor's estate for the benefit of all stakeholders. I believe that the Debtor's advisors conducted a robust marketing process and conducted the sale process in compliance with the Bidding Procedures Order, and that the Debtor and its advisors afforded potential purchasers an appropriate opportunity to participate in the bidding process and make higher or better offers for the Assets. It is my understanding that given the extensive marketing to date, continued marketing of the Assets would not produce any higher bid. I believe the sale is the only actionable and viable alternative to maximizing the value of the Assets and any delay in the consummation of the sale would result in the Debtor incurring additional administrative fees and expenses without a material benefit to the Debtor's estates and its stakeholders, which would ultimately result in a value destructive liquidation.

17. Accordingly, I recommended to the E&T Committee that it authorize the Debtor to enter into the proposed sale to the Successful Bidder. Following my recommendation, the E&T Committee voted unanimously in favor of authorizing the Debtor to entire into the Purchase Agreement between the Debtor and the Successful Bidder.

## Conclusion

18. Based on the foregoing, I believe it is appropriate that the Court approve the Purchase Agreement with the Successful Bidder on the terms set forth therein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Date: February 1, 2023

/s/ *Lawrence Perkins*
Lawrence Perkins
Chief Restructuring Officer & President,
Quanergy Systems, Inc.