IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| QUANERGY SYSTEMS, INC.,[1] | Case No. 22-11305 (CTG) |
| Debtor. | **Re: D.I. 12 & 59** |

**DECLARATION OF ALEC HAESLER IN SUPPORT OF THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

I, Alec Haesler, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Vice President at Raymond James & Associates, Inc. ("Raymond James"), which has its principal office at 880 Carillon Parkway, St. Petersburg, Florida 33716. Raymond James has been retained as investment banker to the above-captioned debtor and debtor in possession (the "Debtor") pursuant to the *Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtor, Effective as of Petition Date, (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2, and (III) Granting Related Relief* [Docket No. 155].

2. I submit this declaration (this "Declaration") in support of the sale of substantially all of the Debtor's assets (the "Assets") to ROLISI, LLC, or its designee ("ROLISI") pursuant to the *Asset Purchase Agreement* between the Debtor and ROLISI (as may be amended, the "Purchase Agreement") and the Bidding Procedures Motion.[2] On December 21, 2022, the

---

[1] The Debtor and the last four digits of its taxpayer identification number are: Quanergy Systems, Inc. (5845). The Debtor's mailing address for purposes of the Chapter 11 Case is 433 Lakeside Drive, Sunnyvale, CA 94085.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

30087703.1

Court entered an order granting the relief requested in the Bidding Procedures Motion, including approving the Bidding Procedures and authorizing the Debtor's entry into a Purchase Agreement with the Successful Bidder, subject to a further hearing and entry of the Sale Order [Docket No. 59] (the "<u>Bidding Procedures Order</u>").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information learned from my review of relevant documents, and information I have received from members of the Debtor's management team and the Debtor's advisors, including my team at Raymond James. If I were called to testify, I could and would testify competently to the facts set forth herein.

### Professional Qualifications

4. I have more than 11 years of restructuring, investment banking, and financial advisory experience. During my career, I have advised various stakeholders to over 40 companies, many of which had been experiencing financial distress. Prior to joining Raymond James, I was a Director at Carl Marks Advisory Group LLC. In this role, my primary responsibilities included advising clients on engagements across a combination of special situations investment banking, restructuring advisory, and operational performance improvement initiatives.

5. Raymond James is a subsidiary of Raymond James Financial, Inc. ("<u>RJF</u>"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients. RJF and its subsidiaries employ over 15,000 individuals in the United States alone, of which more than 400 provide investment banking advisory services to firm clients. Since 2017, Raymond James has participated in raising over $310 billion in capital for its corporate clients and completed more than 1,055 advisory

30087703.1

assignments, including more than 870 M&A buy-side or sell-side advisory assignments. Raymond James and its senior professionals have considerable expertise and experience in providing investment banking services to financially distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out-of-court restructurings.

6. Some representative engagements that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include: American Eagle Energy Corporation; American IronHorse Motorcycles, Inc.; ATLS Acquisition, LLC; BI-LO, LLC; Bluestem Brands, Inc.; Buccaneer Energy; Calpine Energy; CB Holding Corp.; CCNG Energy Partners; ColorSpot Holdings, Inc.; Dakota Plains Holdings, Inc.; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; Halt Medical, Inc.; Hipcricket, Inc.; HMX Acquisition Corp.; Hooper Holmes, Inc.; International Garden Products, Inc.; Just One More Restaurant Corp.; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; LVI Intermediate Holdings, Inc.; Max & Erma's, Inc.; National Envelope Corporation; Personal Communication Devices, LLC; Phoenix Payment Systems, Inc.; Proteus Digital Health, Inc.; Renew Energy, Inc.; Response Genetics, Inc.; Robbins Bros. Corporation; Santa Fe Gold Corporation; SynCardia Systems, Inc.; SP Newsprint Holding LLC; Teligent, Inc.; and The Palm Restaurant Group, Inc.

7. Raymond James has a dedicated 25-person restructuring investment banking group with extensive experience advising corporations, creditors' committees, and other constituents in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings. Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases,

30087703.1

3

including, without limitation, sale, restructuring, financing, financial opinion, and special advisory transactions.

8. Raymond James has an 85-person Technology & Services investment banking group advising clients across a range of transaction sizes and deal types, including mergers and acquisitions, public equities, equity private placements and debt origination transactions. Raymond James is one the most active middle market technology M&A advisors, having completed over 240 transactions since 2016.

### The Debtor's Prepetition and Postpetition Sale Process

9. As described in the Richards Declaration, prior to the Petition Date, the Debtor engaged Raymond James in June 2022 to explore and evaluate strategic alternatives, including a business combination (*i.e.*, a sale to a third party as a going concern) and a debt financing transaction (*i.e.*, a capital raise of structured private debt). Raymond James' business combination outreach focused on parties that would be a strategic fit for the Debtor, including other LiDAR providers and other prospects that could potentially leverage the Debtor's sensors and software in other markets. The Debtor, with the assistance of Raymond James, contacted 36 potential buyers as part of the prepetition business combination marketing process. In addition, Raymond James contacted an additional 118 parties as part of the prepetition debt financing marketing process.

10. As described in the Bidding Procedures Motion and the *Supplemental Declaration of Geoffrey Richards in Support of the Bidding Procedures Motion* [Docket No. 56] (the "Supplemental Richards Declaration", and together with the Richards Declaration, the "Richards Declarations"), during the Chapter 11 Case, the Debtor and its advisors continued to market its Assets to build upon its prepetition marketing efforts. Postpetition, the Debtor, with the assistance of Raymond James, marketed its Assets more broadly, including by contacting potential

30087703.1

purchasers that may be interested in only certain business segments or assets. Raymond James actively reached out to new potential buyers while simultaneously reengaging parties who had participated in the Debtor's prepetition marketing process. Specifically, Raymond James engaged with a total of 141 potential purchasers postpetition: Raymond James contacted (i) 35 potential purchasers that it contacted as part of the prepetition business combination sale process, (ii) five (5) financing parties that Raymond James contacted as part of the prepetition debt financing process, and (iii) 84 new parties as part of its postpetition outreach, including (1) one party introduced to the Debtor by counsel to the Official Committee of Unsecured Creditors. In addition, the Debtor received and engaged with 17 inbound parties in interest. At the conclusion of the postpetition marketing process, 28 potential purchasers executed confidentiality agreements with the Debtor, 17 of which were executed postpetition.

### The Auction

11. Prior to the commencement of the Auction, the Debtor received five (5) Bids, and determined, in consultation with the Consultation Parties, that four (4) Bids met the criteria to be "Qualified Bids" pursuant to the Bidding Procedures. Two of the Qualified Bids were for only certain assets of the Debtor, and the other two Qualified Bids were for substantially all of the Debtor's assets.

12. On January 24, 2023, in accordance with the Bidding Procedures Order, the Debtor adjourned the Auction to January 26, 2023 at 12:00 p.m. (prevailing Eastern Time). The Auction took place at the offices of Raymond James located at 320 Park Ave., Floor 12, New York, NY 10022. The Debtor did not close the Auction on January 26, 2023, and instead, pursuant to the Bidding Procedures and in consultation with the Consultation Parties, determined that it would be in the best interests of the Debtor's estate if the Auction were adjourned to a later date and time.

The adjournment provided the Debtor and its advisors time to review and consider the then highest bid, and discuss the same with the Consultation Parties. The Debtor, in consultation with the Consultation Parties, resumed the Auction on January 30, 2023. Prior to resuming the Auction on January 30, 2023, the Debtor received another Bid from a prospective Bidder, which bid was for substantially all of the Debtor's assets. The Debtor determined, in consultation with the Consultation Parties, to qualify this bid. Therefore, upon resuming the Auction on January 30, 2023, there were five (5) Qualified Bids.

13. Upon the conclusion of the Auction on that same date, the Debtor, in consultation with the Consultation Parties, determined that the Qualified Bid submitted by ROLISI was the highest or otherwise best offer for the Debtor's Assets, and named ROLISI the Successful Bidder of the Assets, and named Quanergy 3D, LLC as the Next-Highest Bidder. The Successful Bidder and the Debtor finalized the agreed sale terms in the Purchase Agreement in the days following the Auction. The Debtor filed a substantially final form of the Purchase Agreement on January 30, 2023 [Docket No. 180].

14. The Successful Bidder is a Florida limited liability company. It is my understanding that ROLISI currently has one owner, but that a member of the Debtor's Board, Tamer Hassanein, may become a member of ROLISI prior to or following the Closing Date, and that therefore, a future member of the Successful Bidder is as an "insider" of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Court. As more fully described in the *Declaration of Lawrence Perkins in Support of the Sale of Substantially All of the Debtor's Assets* filed contemporaneously herewith, it is my understanding that the Debtor has taken a number of steps to ensure that the marketing process is fair to all potential bidders, including adopting certain corporate governance measures prior to commencing the Chapter 11 Case. Based on my

30087703.1

professional experience and knowledge of the Chapter 11 Case, I believe that the Successful Bidder acted in compliance with the Bidding Procedures Order and conducted itself in a non-collusive, fair, and good faith manner. I am unaware of any facts indicating that either the Debtor or the Successful Bidder are fraudulently entering into the transaction contemplated by the Purchase Agreement.

15. Given the extensive marketing to date and my experience as a restructuring professional, I believe that the terms of the Purchase Agreement represent the highest and best offer for the Assets. I believe that the Debtor conducted a fulsome marketing process in compliance with the Bidding Procedures Order, and that the Debtor and its advisors have afforded potential purchasers with the appropriate opportunity to participate in the auction process for the Assets. Based on my professional experience, the sale process was robust, fair, and consistent with other sale processes in other similar chapter 11 cases. I do not believe that continued marketing would produce any higher bid and that delaying the close of the sale would result in the Debtor incurring additional administrative fees and expenses without a material benefit to the Debtor's estates.

16. It is my further opinion that the consideration provided by the Successful Bidder pursuant to the Purchase Agreement is fair and reasonable and, based on the cash consideration provided to the Debtor's estate and the assumed liabilities taken by the Successful Bidder, is the highest and best offer for the Assets. I believe the purchase price provides greater value for the Assets than the Debtor could have otherwise generated from the liquidation of the Assets. Furthermore, in addition to the cash consideration, the Purchase Agreement provides for the assumption of certain liabilities, including the payment of Cure Costs in connection with any assumption and assignment of Assumed Contracts and liabilities arising from warranty or

servicing claims asserted after the Closing Date with respect to any product sold by the Debtor within the six (6) month period prior to the Closing Date. I understand that the Purchaser may also offer employment to certain of the Debtor's employees, and continue certain customer relationships. As such, I believe the Successful Bid and the Purchase Agreement represent a significant opportunity for the Debtor to recognize value from the Assets.

17. I believe the Purchase Agreement was proposed, negotiated, and entered into in good faith, after arms' length negotiations, and without collusion. I believe the Successful Bidder has acted, at all times, in good faith, and I am not aware of any evidence of collusion in the sale process. I believe the Successful Bid constitutes the highest or otherwise best offer for the Assets and is the result of a comprehensive, competitive, and transparent sale process.

### Conclusion

18. Based on the foregoing, I believe that the Purchase Agreement represents the highest and best offer for the Assets, and it is appropriate that the Court approve the Purchase Agreement with the Successful Bidder on the terms set forth therein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Date: February 1, 2023

/s/ *Alec Haesler*
Alec Haesler
Vice President
Raymond James & Associates, Inc.,
Investment Banker to the Debtor

30087703.1