**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUANERGY SYSTEMS, INC.,[1] | ) | Case No. 22-11305 (CTG) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) | **Ref Docket Nos: 12 & 59** |

**ORDER (A) AUTHORIZING THE SALE OF CERTAIN ASSETS OF
THE DEBTOR TO ROLISI, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated December 13, 2022 [Docket No. 12] (the "Motion") of Quanergy

Systems, Inc. (the "Debtor"), as debtor and debtor in possession in the above-captioned case

(the "Chapter 11 Case"), pursuant to sections 105, 363 and 365 of title 11 of chapter 11 of the

United States Code, §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, and

9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1,

6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of, among other

things, (i) an order (the "Bidding Procedures Order")[2] (a) approving the bidding procedures

(the "Bidding Procedures") in connection with the sale or disposition (the "Sale") of certain of the

Debtor's assets (including the Transferred Assets), (b) authorizing the Debtors to enter into the

Purchase Agreement (as defined below), (c) scheduling an auction (the "Auction") and approving

the form and manner of notice thereof, (d) approving procedures for the assumption and

---

[1] The Debtor and the last four digits of its taxpayer identification number are: Quanergy Systems, Inc. (5845). The Debtor's mailing address for purposes of this Chapter 11 Case is 433 Lakeside Drive, Sunnyvale, CA 94085.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the Purchase Agreement (as defined below), as applicable.

assignment of certain executory contracts and unexpired leases, (e) scheduling a sale hearing (the "Sale Hearing") to approve the Sale and approving the form and manner of notice thereof; and (ii) an order (a) approving the Sale and other transactions contemplated by the Purchase Agreement free and clear of all Claims, Interests and Encumbrances (each as defined below) in accordance with the terms of the Purchase Agreement, (b) approving the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting certain related relief; and the Debtor having executed that certain Asset Purchase Agreement by and among the Debtor and ROLISI, LLC (the "Buyer"), dated as of February 1, 2023 (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Purchase Agreement"), attached hereto as **Exhibit 1**, contemplating the sale of the Transferred Assets to the Buyer free and clear of any Claims, Interests, or Encumbrances (the "Sale Transaction"); and the Court having entered the Bidding Procedures Order on December 21, 2022 [Docket No. 59]; and the Auction having been held on January 26, 2023 and January 30, 2023, in accordance with the Bidding Procedures; and the Debtor having selected Buyer as the Successful Bidder; and the Sale Hearing having been held on February 2, 2023; and the Court having reviewed and considered the relief sought in the Motion, the Purchase Agreement, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of the Chapter 11 Case and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and it appearing

that the Court has jurisdiction over this matter; and it further appearing that the legal and factual

bases set forth in the Motion, the First Day Declaration, the Declaration of Geoffrey Richards in

Support of the Motion [Docket No. 13] and the Supplemental Declaration of Geoffrey Richards in

Support of the Motion [Docket No. 56] (together, the "Richards Declarations"), the Declaration of

Lawrence Perkins in Support of the Motion [Docket No. 187] (the "Perkins Declaration"), the

Declaration of Alec Haesler in Support of the Motion [Docket No. 188] (the "Haesler

Declaration"), the Declaration of Simon Vine in Support of the Motion [Docket No. 182]

(the "Vine Declaration"), and at the Sale Hearing establish just cause for the relief granted herein;

and following the Court's ruling upon the Debtor's motion to reopen the Auction; and in light of

the additional reasons set forth on the record of the Sale Hearing on February 2, 2023; and after

due deliberation thereon,

### THE COURT HEREBY FINDS THAT:[3]

### Jurisdiction and Venue

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware dated as of February 29, 2012, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and proceedings is proper in this

District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Statutory Predicates**

B.       The statutory predicates for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1.

**Final Order**

C.       The Court intends that this Order be a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**Notice of the Purchase Agreement, Assumption and Assignment of Assumed Contracts, Sale Transaction, Sale Hearing and Bidding Procedures Order**

D.       On December 13, 2022 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued to operate and manage its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.       On December 20, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 57 & 60].

F.       The Debtor gave due and proper notice of the proposed Sale, Auction, and Sale Hearing on December 22, 2022 [Docket No. 61] (the "Sale Notice").  The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances and no further notice need be given with respect to the proposed Sale.  As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.  Other parties interested in bidding on the Transferred Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

30087711.1

4

G.      The Debtor also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtor and assigned to the Buyer to each non-debtor party under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the Assumed Contracts, filed on December 29, 2022 [Docket No. 79] (the "Assumption and Assignment Notice").  Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assumed Contracts are hereby deemed to consent to the relief granted herein unless otherwise provided in this Order.

H.      As evidenced by the affidavits of service [Docket Nos. 33, 71, 72, 90, 102, 176, 178, 184, 185, and 186] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order and the Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1.  The Debtor has complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order and the Sale Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order or the Sale Transaction is or shall be required.

I.       A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

### Compliance with the Bidding Procedures Order

J.       As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor has complied in all material respects with the Bidding Procedures Order.  The Debtor and its professionals have adequately and appropriately marketed the Transferred Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtor's fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Transferred Assets.

K.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Transferred Assets.  The Debtor conducted the sale process without collusion and in accordance with the Bidding Procedures.

L.      The Bidding Procedures Order is incorporated herein by reference.

M.     Buyer is the Successful Bidder, and the Purchase Agreement is the Successful Bid, for the Transferred Assets in accordance with the Bidding Procedures Order.  Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement, and the Sale Transaction and the Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

**Business Judgment**

N.       The Purchase Agreement, including the form and total consideration to be realized by the Debtor under the Purchase Agreement, (i) constitutes the highest and best offer received by the Debtor for the Transferred Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor, its estate, its creditors and all other parties in interest.

O.       The Debtor's determination that the consideration provided by Buyer under the Purchase Agreement constitutes the highest and best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtor's business judgment.

P.       Consistent with its fiduciary duties, the Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of its obligations under the Purchase Agreement, including, but not limited to, the fact that (i) the consideration provided by Buyer under the Purchase Agreement will provide a greater recovery for the Debtor's estates than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, creditor recoveries will be diminished.

**Corporate Authority**

Q.       Subject to entry of this Order, the Debtor (i) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtor

of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) needs no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Purchase Agreement or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## **Good Faith**

R.      The sales process engaged in by the Debtor and the Buyer, including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, and the negotiation of the Purchase Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

S.      The Debtor and Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures. The Debtor, and its management, board of directors (or appropriate committee thereof), employees, agents, advisors, and representatives, and the Buyer and its employees, agents, advisors and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. The Buyer subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Transferred Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

T.      The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtor nor Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtor was free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtor's estate.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer would not consummate the Sale Transaction without such protections.

U.      The form and total consideration to be realized by the Debtor under the Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets.

V.      Neither the Buyer nor any of its current affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exist between the Debtor and the Buyer.  As set forth in the Perkins Declaration and Haesler Declaration, the Successful Bidder is a Florida limited liability company and currently has one owner.  A member of the Debtor's Board of Directors, Tamer Hassanein, may become a member of ROLISI prior to or following the Closing Date, and therefore, a future member of the Successful Bidder is an "insider" of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Court.

**No Fraudulent Transfer**

W.    The consideration provided by the Buyer for the Transferred Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

X.    The Purchase Agreement was not entered into, and neither the Debtor nor the Buyer has entered into the Purchase Agreement or proposes to consummate the Sale Transaction, for the purpose of (i) escaping liability for any of the Debtor's debts or (ii) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**Free and Clear**

Y.    The transfer of the Transferred Assets to the Buyer will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Buyer with all right, title, and interest of the Debtor to the Transferred Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and Encumbrances, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges,

indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, including, without limitation, liens and liabilities, but excluding Assumed Liabilities, collectively being referred to in this Order as "Claims" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof).  The term "Encumbrances" shall mean any mortgage, lien, pledge, security interest, charge, easement,

covenant, right of way, title defect, other survey defect, or dispute as to the ownership of a Transferred Asset.

Z.    The Debtor, to the extent permitted by applicable law, may transfer the Transferred Assets free and clear of all Claims, other interests of any kind or nature whatsoever ("Interests"), and Encumbrances, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

AA.    Those (a) holders of Claims, Interests, or Encumbrances, and (b) non-Debtor parties to the Assumed Contracts, in each case who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Claims, Interests, or Encumbrances, and (ii) non-Debtor parties to the Assumed Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

BB.    The Debtor has, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

CC.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all Claims, Interests, and Encumbrances, or (ii) if the Buyer would, or in the future could, be liable for or subject to any such Claims, Interests, or Encumbrances. The Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Buyer, its respective

affiliates, its respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims, Interests, or Encumbrances.

DD.    Not transferring the Transferred Assets free and clear of all Claims, Interests, and Encumbrances would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Claims, Interests, and Encumbrances would be of substantially less benefit to the Debtor's estate.

EE.    Neither the Buyer nor any of its affiliates are a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Buyer, the Debtor, or any of their respective affiliates, and there is no continuity of enterprise between the Buyer, the Debtor, or any of their respective affiliates.  Neither the Buyer nor any of its affiliates are holding themselves out to the public as a continuation of the Debtor.  Neither the Buyer nor any of its affiliates are a successor to the Debtor or its estate and none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into the Debtor.

FF.    Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of the Buyer, its affiliates, its and their respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal,

state or local income tax liabilities, that the Debtor may incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or that the Debtor has otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

### Validity of Transfer

GG.    The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

HH.    The Transferred Assets constitute property of the Debtor's estate and good title to the Transferred Assets is vested in the Debtor's estate within the meaning under section 541(a) of the Bankruptcy Code.  The Debtor is the sole and lawful owner of the Transferred Assets, and no other person has any ownership right, title, or interest therein.

II.    The Purchase Agreement has been duly and validly executed and delivered by the Debtor and, subject to the terms of the Purchase Agreement, shall constitute a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.  The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any chapter 7 or chapter 11 trustee appointed in this Chapter 11 Case, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

## Assumed Contracts

JJ.    The assumption and assignment of the Assumed Contracts pursuant to the Assumption and Assignment Notice, the terms of this Order and the Purchase Agreement is integral to the transactions contemplated by the Purchase Agreement and is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest, and represents a reasonable exercise of the Debtor's sound and prudent business judgment.

KK.    Pursuant to the terms of the Purchase Agreement and this Order, on or before the Closing Date, as applicable pursuant to the terms of this Order, the Debtor or the Buyer, as applicable, shall have, except as otherwise provided in the Purchase Agreement or this Order, or as otherwise expressly agreed to between the Debtor or Buyer, as applicable, and such counterparty:  (i)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

LL.    To maximize the value of the Transferred Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth in the Purchase Agreement.  Time is of the essence in consummating the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption

and assignment of the Assumed Contracts. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

MM.    The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtor's estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtor, and therefore, do not constitute a *sub rosa* plan.

NN.    The legal and factual bases set forth in the Motion, the Richards Declarations, the Perkins Declaration, the Haesler Declaration, and the Vine Declaration, filed in support thereof, and presented at the Sale Hearing establish just cause for the relief granted herein.

## IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.    The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is authorized and approved.

2.    Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and

entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

### Approval of the Purchase Agreement

3.      The Purchase Agreement, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction, the releases, and the assumption and assignment of the Assumed Contracts, and all the terms and conditions thereof, are approved.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, and the Court finds that the Purchase Agreement be authorized and approved in its entirety.

4.      The Debtor and its respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by the Buyer to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Buyer of all Transferred Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order; and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the Transferred Assets, all without further order of this Court.  The Debtor is further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtor under the Purchase Agreement, this Order, or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.      All persons and entities, including, without limitation, the Debtor, the Debtor's estate, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtor or the Transferred Assets, arising under or out of, in connection with, or in any way relating to, the Debtor, the Transferred Assets, the operation or ownership of the Transferred Assets by the Debtor prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Buyer, its affiliates, successors, assigns, its property, or the Transferred Assets, including, without limitation, taking any of the following actions with respect to any Claims: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (c) creating, perfecting, or enforcing any Claim against the Buyer, its affiliates, any of their respective successors, assigns, assets (including the Transferred Assets), and/or properties; (d) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against the Buyer, its affiliates or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Debtor's ability

to transfer the Transferred Assets to the Buyer in accordance with the terms of this Order and the Purchase Agreement.  No such Person shall assert or pursue against the Buyer or its affiliates, successors or assigns any such Claim.

6.      The sale of the Transferred Assets to the Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Transferred Assets are located, and the sale of the Transferred Assets to Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**Transfer of the Transferred Assets Free and Clear**

7.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Transferred Assets shall be sold free and clear of all Claims, Interests, and Encumbrances, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtor with the same validity, force, priority and effect which they now have as against the Transferred Assets, subject to any claims and defenses the Debtor may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

8.      At Closing, all of the Debtor's right, title and interest in and to, and possession of, the Transferred Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Claims, Interests, and Encumbrances.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and

shall vest the Buyer with good and marketable title to, the Transferred Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Transferred Assets are authorized to surrender possession of the Transferred Assets to the Buyer on the Closing Date or at such time thereafter as Buyer may request.

9.      This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Purchase Agreement.

10.     Except as otherwise expressly provided in the Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, any and all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, former employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtor or the Transferred Assets arising under or out of, in connection with, or in any way relating to, the Debtor, the Debtor's predecessors or affiliates, the Transferred Assets, the ownership, sale or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover

on account of any Claims against the Buyer, its successors or assigns, their property or the Transferred Assets. Following the Closing, no holder of any Claim or Encumbrance shall interfere with Buyer's title to or use and enjoyment of the Transferred Assets based on or related to any such Claim or Encumbrance, or based on any action or omission of the Debtor, including any action or omission the Debtor may take in the Chapter 11 Case.

11. The Debtor is authorized and directed to execute such documents as may be necessary to release any Claims, Interests, or Encumbrances of any kind against the Transferred Assets as such Claims, Interests, or Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims, Interests, or Encumbrances against or in the Transferred Assets shall not have delivered to the Debtor prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims, Interests, or Encumbrances that the person or entity has with respect to the Transferred Assets, (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transferred Assets; (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims, Interests, or Encumbrances against the Buyer and the applicable Transferred Assets; (c) the Debtor's creditors and the holders of any Claims, Interests, or Encumbrances are authorized to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims, Interests, or Encumbrances in the Transferred Assets; and (d) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction

and releases of all such Claims, Interests, or Encumbrances with respect to the Transferred Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized and directed to accept this Order for filing or recording.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Transferred Assets free and clear of Claims, Interests, and Encumbrances shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Transferred Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer with respect to the Transferred Assets as of the Closing Date.  To the extent the Buyer cannot operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Buyer, with assistance from the Debtor (and at the Buyer's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Buyer.

13.     No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or

similar grant relating to the operation of the Transferred Assets on account of the filing or pendency of the Chapter 11 Case or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

## No Successor or Transferee Liability

14.     Upon the Closing Date, except as provided in the Purchase Agreement, the entrance of this Order and the approval of the terms of the Purchase Agreement shall mean that Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the transfer or operation of the Transferred Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act

of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (iii) any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

15.    Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtor related to the Transferred Assets or (b) any Claims against the Debtor or any of their predecessors or affiliates.  By virtue of the Buyer's purchase of the Transferred Assets, neither the Buyer nor any of its affiliates shall have any liability whatsoever with respect to the Debtor's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA),  successor  or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtor's employment agreements or health or benefit

plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing or such later time as the Buyer is assigned any Assumed Contract (collectively, with the potential claims set forth in paragraph 15, "Successor or Transferee Liability").    Buyer would not have acquired the Transferred Assets but for the foregoing protections against Successor or Transferee Liability.

16.    None of the Buyer or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by the Debtor or any of its estate, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement and the entry into and consummation of the sale of the Transferred Assets, except as expressly provided in the Purchase Agreement and this Order.

17.    Nothing in this Order or the Purchase Agreement shall require Buyer or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, former employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

18.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtor that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

### Good Faith; Arm's Length Sale

19.    The Purchase Agreement has been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, are and have been undertaken, by the Debtor, the Buyer and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement, and shall not permit the unwinding of the Sale Transaction.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

20.    Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, to be avoided, or for costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by Buyer for the Transferred Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of the Assumed Contracts

21.     Except as otherwise expressly provided in the Purchase Agreement or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtor is authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts, set forth on **Exhibit 2** (the "Assumed Contracts Exhibit") attached hereto to Buyer free and clear of all Claims, Interests, and Encumbrances and (b) execute and deliver to Buyer such documents or other instruments as may be reasonably requested by Buyer to assign and transfer the Assumed Contracts to Buyer.

22.     From time to time during or within three (3) business days following the Designation Right Period, and only to the extent Buyer delivers to Seller an Assumption Notice pursuant to the terms of the Purchase Agreement, the Debtor shall file an amended Exhibit 2, which Assumed Contract(s) listed thereon shall be deemed an "Assumed Contract" and assumed and assigned to Buyer pursuant to this Order, provided, that, (a) the Cure Costs listed on the Assumption and Assignment Notice (or where a timely filed objection to such Cure Cost has been filed by the non-Debtor counterparty to an Assumed Contract, such Cure Cost as agreed between the non-Debtor counterparty to an Assumed Contract and the Buyer) shall be paid upon assumption and assignment, and (b) in the event the Volume Supply Agreement and related purchase orders between the Debtor and Fabrinet (the "Fabrinet Contracts") are listed on an amended Exhibit 2, the Debtor shall provide to Fabrinet (i) the identity of the proposed assignee of the Fabrinet Contracts, to the extent the assignee is a designee of the Buyer and (ii) information providing adequate assurance of future performance of the Fabrinet Contracts, and to the extent the Debtor and Fabrinet are unable to reach an agreement with respect to the assumption and assignment of the Fabrinet Contracts, the Debtor shall request an Assumption/Assignment Hearing (as defined in the Bidding Procedures Order) on not less than seven (7) day's notice and subject to the availability

of the Court to resolve all issues related to the assumption of the Fabrinet Contract and assignment of the Fabrinet Contract (including, without limitation, the requirement that the Court makes a finding of fact that adequate assurance of future performance by the assignee of such contract has been satisfied).

23.    The Cure Costs listed on the Assumption and Assignment Notice and Assumed Contracts Exhibit are the sole amounts necessary to be paid upon assumption and assignment of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code.  Upon the payment of the Cure Costs, if any, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Costs shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the Cure Costs, following the Closing Date the Debtor shall have no further liabilities to the counterparties to the Assumed Contracts.

24.    In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or Cure Costs of any executory contract or unexpired lease proposed to be an Assumed Contract, the assumption and assignment of such executory contract or unexpired lease, and payment of any applicable Cure Costs, shall be made upon (a) the entry of an order of the Court resolving any such dispute and upon the election of the Buyer to retain such executory contract or unexpired lease as an Assumed Contract, or (b) the consensual resolution of such dispute as may be agreed by the Buyer and such counterparty.  Upon an election of the Buyer to designate an executory contract or unexpired lease as an Excluded Contract under the Purchase Agreement, the

Buyer shall have no liability whatsoever to the counterparty to such executory contract or unexpired lease or to the Debtor as it relates to such Excluded Contract, except as otherwise provided in the Purchase Agreement.

25.     To the extent any non-Debtor party to an Assumed Contract has failed to timely object to a proposed Cure Cost, such Cure Cost has been and shall be deemed to be finally determined in the amount listed on the Assumption and Assignment Notice and Assumed Contracts Exhibit and any such non-Debtor party shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  The non-Debtor party to an Assumed Contract is forever bound by the applicable Cure Cost and, upon payment of the Cure Cost as provided herein and in the Purchase Agreement, is hereby enjoined from taking any action against the Debtor or the Buyer with respect to any claim for cure under the Assumed Contract.

26.     The Debtor is hereby authorized to supplement the Assumption and Assignment Notice to add additional contracts and to assume and assign such contracts in accordance with the terms of this Order; provided, however, that the Debtor shall provide fourteen days' notice to any non-Debtor counterparty to such additional contract of the potential assumption and assignment of such contract and the Debtor's proposed Cure Cost.

27.     Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

28.     Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment, including for purposes of sections

365(c)(1)(B) and 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise, if such party failed to object to the assumption and assignment of such Assumed Contract.

29.     Each Assumed Contract constitutes an executory contract or unexpired lease under the Bankruptcy Code and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assumed Contracts have been, or will be, satisfied.  Upon the Buyer's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with sections 363 and 365 of the Bankruptcy Code, (a) the Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtor under the Assumed Contracts, (b) the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts, and (c) the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

30.     The Buyer has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

31.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtor or the Buyer as a result of the assumption and assignment of the Assumed Contracts.  Subject to the terms of the Purchase Agreement, the validity of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between the Debtor and the non-Debtor party to an Assumed Contract regarding the payment of any amount.  Upon assignment to the Buyer, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Buyer in accordance with their respective terms.

32.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or the Buyer any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of and including the Closing Date under the Purchase Agreement or arising by reason of the consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

33.    All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Debtor or the Buyer for any instruments, applications, consents or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Transferred Assets.

## **Related Relief**

34.    Quanergy 3D, LLC is hereby declared the Next-Highest Bidder pursuant to its Next-Highest Bid (each as defined in the Bidding Procedures) for the Assets and on the terms set forth in the asset purchase agreement submitted by Quanergy 3D, LLC (as may be amended, supplemented, or otherwise modified in accordance with its terms, the "Next-Highest Bidder Purchase Agreement") and at the highest proposed purchase prices submitted by Quanergy 3D, LLC at the Auction.  The Next-Highest Bidder is provisionally approved in the event the Buyer does not close on its Purchase Agreement.  If the Buyer fails to close in accordance with the Purchase Agreement, the Debtor may seek a hearing on an expedited or emergency basis for an order to approve the Next-Highest Bidder Purchase Agreement.  The rights and remedies of the

Next-Highest Bidder in accordance with the terms of the Bidding Procedures Order and the Next-Highest Bidder Purchase Agreement are fully preserved.

35.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

36.     No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Transferred Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Chapter 11 Case or the consummation of the sale of the Transferred Assets.

37.     Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset.

38.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of the Transferred Assets to the Buyer on or prior to the Closing Date or such later date that such party and the Buyer mutually agree.

39.     To the extent this Order is inconsistent with any prior order or pleading filed in the Chapter 11 Case related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement, the terms of this Order shall govern.

30087711.1

40.     This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all non-Debtor parties to the Assumed Contracts, any Court-appointed committee, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Chapter 11 Case or upon a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Purchase Agreement and Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection or avoidance (as applicable) of the Purchase Agreement or the Sale Transaction.

41.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any counterparty to any executory contract or unexpired lease of the Debtor (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Transferred Assets;

provided, however, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Purchase Agreement, the Bidding Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Debtor and its assets, including the Transferred Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to sections 105(a) or 363 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Transferred Assets to the Buyer.

42.     At any time prior to the Closing Date, the Buyer or the Debtor may terminate the Purchase Agreement pursuant to the terms thereof without any penalty or liability to the Buyer or the Debtor (or its estate), except as set forth in the Purchase Agreement.

43.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

44.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtor is not subject to any stay of this Order or in the implementation, enforcement or realization of the relief

granted in this Order; and (c) the Debtor and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

45.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code, to give any notice permitted by the Purchase Agreement or to enforce any of its remedies under the Purchase Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

46.     The provisions of this Order are non-severable and mutually dependent.

47.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Dated: February 2nd, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**